UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY ROE,

                    Plaintiff,                              Case No. 16-cv-13353
                                                                Hon. Mark A. Goldsmith

vs.

RICHARD D. SNYDER, et al.,

                    Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO STAY (Dkt. 26);**
**DENYING DEFENDANT WORTHY'S MOTION TO DISMISS (Dkt. 33); AND**
**GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Dkt. 34)**

        This case concerns Michigan's Sex Offender Registration Act ("SORA"), Mich. Comp. Laws § 28.721 et seq. Recently, the Sixth Circuit issued Does #1-5 v. Snyder, 834 F.3d 696 (6th Cir. 2016), reh'g denied, (Sept. 15, 2016), which held that certain provisions of SORA, added by amendment, cannot be applied retroactively without violating the Ex Post Facto Clause of the U.S. Constitution. One registrant, Mary Roe, moves for a preliminary injunction that will enjoin the enforcement of these amendments against her (Dkt. 34). Although Does #1-5 answers the underlying legal question, it is uncontested that the Does #1-5 only binds state prosecutorial authorities as to the named plaintiffs in that case. For the reasons that follow, this Court declines to stay or dismiss the case and grants Roe's motion.

## I.  BACKGROUND

        SORA was amended, in pertinent part, in 2006 and 2011. The 2006 Amendment prohibits registrants from living, working, or loitering within 1000 feet of a school. See 2005 Mich. Pub. Acts 121, 127. The 2011 Amendment requires all registrants to appear in person

"immediately" to update information such as new vehicles or "internet identifiers" (e.g., a new email account), or to provide travel plans that would take them away from their registered residence for more than seven days.  See 2011 Mich. Pub. Acts 17, 18.  The 2011 Amendment also establishes a three-tiered, public classification of registrants, assigning a registrant's tier based in part on his or her crime of conviction, and it retroactively lengthens the time that one must remain on the registry based upon one's tier.  Id.

On August 25, 2016, the Sixth Circuit issued Does #1-5 v. Snyder.  That case held that the retroactive imposition of the 2006 and 2011 Amendments on those who were convicted before the Amendments' enactment amounts to "a criminal penalty" and, therefore, violates the Ex Post Facto Clause.  In light of that holding, it declined to reach the issue — decided by the district court per the Honorable Robert Cleland in favor of the plaintiffs, see Doe v. Snyder, 101 F. Supp. 3d 672, 684 (E.D. Mich. 2015) — whether the 1000-foot school zone law was void for vagueness.

The instant Plaintiff, Mary Roe, was convicted in 2003 of having sex with "an underage teen" when she was 19.  See Am. Compl. ¶ 3 (Dkt. 20).  She became subject to the version of SORA in effect at that time.  Id.  She served two and a half years in prison.  Id. ¶ 42. Subsequently, she became subject to the 2006 and 2011 Amendments when they became effective.  Id. ¶ 49.

Roe is employed as the clinical director of a residential drug treatment facility, located in Wayne County, and has been for the past eight years.  Id. ¶ 7.  Pursuant to SORA, she routinely reported her employer's address to authorities since becoming employed there.  Id. ¶ 51.  On September 9, 2016 — after the August 25, 2016 issuance of Does #1-5, but before rehearing was denied — a Royal Oak police officer (Officer Kevin Cavanaugh) informed Roe that her place of

employment was within 1000 feet of a school in violation of the 2006 Amendment, Mich. Comp. Laws § 28.734(1)(a), and that she must resign immediately or face prosecution for a SORA violation.  See Am. Compl. ¶¶ 6, 8.  Cavanaugh indicated at that time that he was aware of Does #1-5.  Id. ¶ 57.  At their meeting, Plaintiff told Cavanaugh that her research indicated that her workplace was 1,056 feet from a school; Cavanaugh said that his own research indicated that the distance was less than 1,000 feet.  Id. ¶¶ 63-64.

Shortly thereafter, SORA's publicly accessible registry listed Roe as "Non-compliant, Employment Violation."  Id. ¶¶ 58-60; see also Redacted Registry Page for Mary Roe, Ex. 3 to Am. Compl. (Dkt. 20-4).  Thereafter, the Royal Oak police department, per a stipulation with Roe, agreed to take affirmative action to restore her status to "compliant," see 12/12/16 Stip. & Order (Dkt. 45), and Roe now admits that she is listed as "compliant" on the public registry, see Pl. Mot. at 5 n.4 (Dkt. 34).  Pursuant to that same stipulation, Officer Cavanaugh and Royal Oak Police Chief Corrigan O'Donohue agreed, on behalf of the Royal Oak Police Department, not to refer Roe to any prosecutorial authority for any violation of the Amendments "that occurs before, or within 21 days after, the date of the final disposition of the ex post facto claim" in Does #1-5. 12/12/2016 Stip. & Order at 2.[1]

Roe claims that Cavanaugh's instruction that she must quit her job violated the holding of Does #1-5.  Am. Compl. ¶ 9.  She further claims that she remains subject to the current iteration of SORA, including its specific restrictions pertaining to reporting and travel, and being branded a "tier III" offender, id. ¶¶ 10, 50, 70-71.  Additionally, she claims that, notwithstanding Does #1-5, "[i]t is impossible for [her] to identify the areas that are inside and outside these geographic

---

[1] The stipulation makes clear that Roe is still expected to comply with the pre-Amendments version of SORA, but it affords her a right to notice and an opportunity to comply, because "both Ms. Roe and the Royal Oak Police Department may have difficulty determining exactly which provisions of SORA were in effect prior to 2006."  Id. at 2-3.

exclusion zones," i.e., the 1000-foot border surrounding schools.  Id. ¶ 66.  She has never been provided with a map or an explanation of how the distance is to be measured.  Id. ¶ 67.  Roe argues that the 2006 and 2011 Amendments "are so embedded in the law that they are not severable from the rest of the statute."  Id. ¶ 73.  Does #1-5 did not address severability.  In the alternative (i.e., if the Amendments are deemed severable), Plaintiff argues that the Amendments cannot be enforced, both because of Does #1-5 and because of the reasoning behind Judge Cleland's holdings that (i) the 1000-foot "exclusion zones" are void for vagueness and (ii) certain of the registration requirements are void for vagueness.  See Am. Compl. ¶¶ 74-77; see also 932 F. Supp. 2d 803; 101 F. Supp. 3d 672.[2]  Roe admits that Judge Cleland's holdings are "not binding," but she claims that they provide "an additional reason why those [1000-foot exclusion] zones cannot be applied" to her.  Am. Compl. ¶ 78.

## II. ANALYSIS[3]

### A. Motion to Stay

The Sixth Circuit ultimately did not stay its mandate in Does #1-5, see 11/23/2016

---

[2] Judge Cleland held that retroactive application of the 2006 and 2011 Amendments was not in violation of the Ex Post Facto Clause.  See John Does 1-4 v. Snyder, 932 F. Supp. 2d 803, 813-814 (E.D. Mich. 2013).  It was this holding that the Sixth Circuit reversed.  See Does #1-5, 834 F.3d at 706 ("[w]e therefore reverse the district court's decision that SORA is not an Ex Post Facto law").  The Sixth Circuit expressly declined to address the district court's holdings concerning the 1000-foot exclusion zones and the registration requirements.  See id. ("These questions, however, will have to wait for another day because none of the contested provisions may now be applied to the plaintiffs in this lawsuit, and anything we would say on those other matters would be dicta.").

[3] There was significant overlap within the briefing on the motion for preliminary injunction, motion to stay, and motion to dismiss.  See, e.g., Worthy Resp. to Pl. Mot. at 1 (Dkt. 42) (incorporating arguments made in amended motion to dismiss); Pl. Reply at 1 (Dkt. 43) (incorporating arguments made in other briefs). At the hearing, as well, the parties raised arguments that had been briefed in one motion to support or oppose related issues raised in other motions.  Throughout this opinion, therefore, the Court cites freely to all filings submitted on the various motions, even though the party's argument might not technically appear in a filing on the motion that the Court is discussing.

Mandate, <u>Snyder v. Does #1-5</u>, 15-1536 (6th Cir. 2016), and, on December 14, 2016, the <u>Does #1-5</u> defendants petitioned for a writ of certiorari in the United States Supreme Court, <u>see Snyder v. Does #1-5</u>, 16-768 (U.S. Dec. 15, 2016), which remains pending.

A party seeking to stay proceedings in one case for the resolution of another must "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."  <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 255 (1936); <u>see also Caspar v. Snyder</u>, 77 F. Supp. 3d 616, 644 (E.D. Mich. 2015) ("Where the stay motion is premised on the alleged significance of another case's imminent disposition, courts have considered the potential dispositive effect of the other case, judicial economy achieved by awaiting adjudication of the other case, the public welfare, and the relative hardships to the parties created by withholding judgment.").

Defendants Richard Snyder and Kriste Etue — Michigan's Governor and Director of the State Police, respectively — filed a motion to stay proceedings in this case pending a final judgment in <u>Does #1-5</u> (Dkt. 26).  Defendant Jessica Cooper, the Oakland County Prosecutor, joined in that motion (Dkt. 27).  Their motion asserts that, if certiorari is denied in <u>Does #1-5</u> or if the decision is upheld, that "would have application" to Roe's claims in this case.  <u>See</u> Mot. to Stay at 5.  Similarly, if that decision is reversed, it would resolve "any challenge" brought by Roe.  <u>Id.</u>  The motion argues that Roe will not be prejudiced by a stay, because there is no genuine threat that she will be prosecuted, and that the instant case is a waste of judicial resources in light of its overlap with <u>Does #1-5</u>.  <u>Id.</u> at 5-6.

This Court is unpersuaded by these arguments.  First, and most importantly, the prejudice argument misapprehends the injury claimed by Roe.  She does claim that she fears prosecution for her alleged workplace violation; but she also claims current and ongoing harm caused by

SORA's restrictions and being publicly labeled a "tier III" offender.  See Am. Compl. ¶¶ 50, 70-71.  Roe has, therefore, alleged that a stay will "work damage" to her while waiting for the decision on the certiorari petition in the other case.  And Defendants have not alleged any "hardship or inequity in being required to go forward," Landis, 299 U.S. at 255, other than that which might affect this Court. This Court's additional work on this case, however, is not cognizable prejudice to Defendants.

Furthermore, it is not true that a decision upholding Does #1-5 "would have application" to Roe, nor is it true that a decision overturning Does #1-5 would resolve "any challenge" brought by Roe.  If Does #1-5 actually controlled any prosecutorial decision concerning Roe — as opposed to just the plaintiffs in that case — then the instant Defendants, presumably, would have no issue entering into a written agreement not to prosecute her for any violation of the Amendments for as long as Does #1-5 remains good law.  But they refuse to do this.  Moreover, a Supreme Court decision upholding Does #1-5 will result only in the continuation of the status quo.  And a decision reversing Does #1-5's Ex Post Facto holding would not resolve all of Roe's claims; she also challenges the Amendments on vagueness grounds and asserts that they are not severable from the remainder of the statute.

Finally, because of the constitutional nature of Roe's asserted interests — i.e., her wish to be free from the decidedly unconstitutional imposition of certain criminal penalties — the public interest is served by addressing Roe's claims without delay.  See Caspar, 77 F. Supp. 3d at 644 ("the public interest is always served by robust protection of constitutional guarantees").

Accordingly, the motion for stay is denied.

**B.  Justiciability**

6

Roe seeks a preliminary injunction enjoining Defendants from prosecuting her under "any provision of SORA that cannot be applied to her consistent with [Does #1-5] (including the work zone provision), or from identifying her as noncompliant based on the violation of any such provision." Pl. Mot. at 1-2. Prior to reaching the merits of Roe's request for injunctive relief, however, this Court must address Defendants' justiciability arguments, which take the form of (i) standing, (ii) ripeness, and (iii) mootness. See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006) ("The doctrines of mootness [and] ripeness . . . originate in Article III's 'case' or 'controversy' language, no less than standing does.").

### 1. Roe has standing

Under traditional requirements for standing, plaintiffs must establish (i) an injury-in-fact, meaning an invasion of a legally protected interest; (ii) a causal relationship between the injury and the challenged conduct; and (iii) a likelihood that the injury will be redressed by a favorable decision. G & V Lounge, Inc. v. Michigan Liquor Control Comm'n, 23 F.3d 1071, 1074 (6th Cir. 1994). The gist of all Defendants' arguments on this point are the same: Because Roe cannot point to a credible threat of prosecution by any of the Defendants, there is no injury-in-fact. See Cooper Resp. to Pl. Mot. at 7-14 (Dkt. 24); Snyder/Etue Resp. to Pl. Mot. at 7-11 (Dkt. 25); see also Worthy Am. Mot. to Dismiss at 9 (Dkt. 33) (citing McKay v. Federspiel, 823 F.3d 862 (6th Cir. 2016)). Relatedly, Cooper asserts that Roe cannot satisfy the "causation" criterion of standing, because, even if Roe is suffering a redressable injury, that injury is not "fairly traceable" to Cooper when there is no threat of prosecution from her office. See Cooper Resp. to Pl. Mot. at 17-19.

"In a pre-enforcement challenge, whether the plaintiff has standing to sue often turns upon whether he can demonstrate an 'injury in fact' before the state has actually commenced an

enforcement proceeding against him." McKay, 823 F.3d at 867 (quoting Kiser v. Reitz, 765 F.3d 601, 607 (6th Cir. 2014)).  "'An allegation of future injury may' satisfy the injury-in-fact requirement if the alleged 'threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" Id. (quoting Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2341 (2014)).  "Specifically, 'a plaintiff satisfies the injury-in-fact requirement' in the pre-enforcement context 'where [i] he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but [ii] proscribed by statute, and [iii] there exists a credible threat of prosecution thereunder.'" Id. (quoting Susan B. Anthony List, 134 S. Ct. at 2342) (brackets added).  An actual arrest or prosecution is not necessary to establish standing when the "credible threat" of such is "sufficiently imminent." Susan B. Anthony List, 134 S. Ct. at 2342; see also Steffel v. Thompson, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.").

It is this third criterion — a "credible threat of prosecution" — that the parties dispute.  In McKay, the Sixth Circuit stated that a credible threat of prosecution is established when a plaintiff can "point to some combination of the following factors: (i) a history of past enforcement against the plaintiffs or others; (ii) enforcement warning letters sent to the plaintiffs regarding their specific conduct; . . . (iii) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action"; and/or (iv) "a defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff."  823 F.3d at 869.  All Defendants agree that McKay's standing test — as opposed to the test applicable to a statute that "does not inhibit or 'chill' the expression of a constitutionally protected right," see Nat'l Rifle Ass'n of Am. v.

Magaw, 132 F.3d 272, 285 (6th Cir. 1997) — applies here.  See Cooper Resp. to Pl. Mot. at 10-12 (applying McKay); Snyder/Etue Resp. to Pl. Mot. at 7-8 (same); Worthy Mot. to Dismiss at 8-10 (same).  The balance of these factors points to a credible threat of prosecution.

First, there is a history of past enforcement of the 2006 and 2011 Amendments to SORA. After Wayne County Prosecutor Kym Worthy charged that the record contained no evidence of past enforcement, see Worthy Mot. to Dismiss at 9 n.2, Roe submitted evidence in support of her claim that SORA is aggressively enforced, see Pl. Resp. to Mot. to Stay at 19-20; Pl. Reply at 9-10.  This included evidence that "[b]etween 2006, when the geographic zones were enacted, and 2013, over 600 people were charged with and over 450 people were convicted of geographic zone violations."  Pl. Resp. to Mot. to Stay at 20 (citing SORA Charging Data, Ex. 18 (Dkt. 36-19); SORA Conviction Data, Ex. 19 (Dkt. 36-20)).  Regarding registration violations generally, over 10,000 felony and almost 7,000 misdemeanor charges were brought in Michigan between 1994 and mid-2013.  Pl. Reply at 9-10 (citing Exs. 18-19 to Pl. Resp. to Mot. to Stay).  This volume of charges and convictions represents a history of past enforcement.  See Russell v. Lundergan-Grimes, 784 F.3d 1037, 1047, 1049-1050 (6th Cir. 2015) (finding standing for pre-enforcement challenge based on facts that (i) plaintiff's political signs had been removed by sheriffs in past elections; and (ii) prosecutorial authority "repeatedly fielded and investigated complaints of impermissible electioneering," including the challenged law, committed by persons other than plaintiff).

Defendants' only argument on this point is that there is no history of past enforcement against Roe in particular.  See Cooper Resp. to Pl. Mot. at 12; Snyder/Etue Resp. to Pl. Mot. at 8; Worthy Resp. at 3-4.  First, this is not accurate.  The Amendments are "enforced" against Roe because she currently suffers the punishment of being publicly listed on the registry as a "tier III"

9

offender.  See Wright v. O'Day, 706 F.3d 769, 772 (6th Cir. 2013) (permanent classification as registered child abuser  satisfies injury-in-fact requirement); Susan B. Anthony List, 134 S. Ct. at 2345 (considering fact that plaintiff was subject of complaint under challenged statute at earlier time).[4]  Second, it is also relevant that there is a history of past enforcement against persons other than Roe, see id. (considering fact of "20 to 80" yearly complaints brought under challenged statute); see also McKay, 823 F.3d at 869 (courts should inquiry into "history of past enforcement against plaintiff or others" (emphasis added)); Russell, 784 F.3d at 1049-1150. Defendants' arguments ignore the fact that Roe has shown a history of past enforcement against others.

Roe also can point to a communication resembling "enforcement warning letters sent to the plaintiffs regarding their specific conduct," McKay, 823 F.3d at 869.  In Kiser v. Reitz, 765 F.3d 601, 609 (6th Cir. 2014), the defendants sent the plaintiff letters that "threaten[ed] implicitly enforcement of the regulations" that the plaintiff challenged.  Although these letters "did not commence an official enforcement action," the Sixth Circuit held these communications were relevant to concluding that the plaintiff had established a credible threat of enforcement. Id. Officer Cavanaugh's threat that Roe must quit her job or face prosecution, see Am. Compl. ¶¶ 6, 8, is, like the letters in Kiser, probative of whether the Amendments will be enforced post-Does #1-5.  It does not matter that the Royal Oak defendants stipulated not to prosecute in exchange for Roe waiving any claim of damages against them, see 12/12/2016 Stip. & Order; what matters is that one of the Royal Oak defendants — allegedly with full knowledge of the Does #1-5

---

[4]  Moreover, requiring a plaintiff to demonstrate a history of past enforcement that was specifically directed against her would undermine the purpose of this line of standing cases:  to relieve a plaintiff of the obligation to "first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." Steffel, 415 U.S. at 459.

decision, see Am. Compl. ¶ 57 — visited Roe and issued a threat that, if Roe did not comply with the 2006 and 2011 Amendments to SORA, she would be prosecuted.  Although the Royal Oak defendants have now agreed not to pursue enforcement, the remaining defendants refuse to disavow the threat that his visit represents.

A refusal to disavow future prosecution makes the threat of such prosecution "especially substantial."  Id. at 609.  Here, other than the Royal Oak defendants, no defendant has expressed willingness to enter into an agreement not to prosecute Roe, nor has any defendant unequivocally stated that it will not prosecute Roe or volunteered to remove her public registry page.[5]  See also 10/3/2016 Email, Ex. 20 to Pl. Mot. at 2-3 (cm/ecf pages) (Dkt. 37-2) (Cooper explicitly rejects Roe's proposal to voluntarily dismiss Cooper in exchange for an assurance of non-prosecution).  Defendants have refused to provide assurance that they will not prosecute, even though Roe concedes that such an assurance would moot her request for injunctive relief.  See, e.g., Pl. Br. at 2 (requesting injunctive relief "because Defendants have been unwilling to provide written assurance that they will not prosecute").

Far from disavowing future prosecution, Defendants have suggested that prosecutions under the 2006 and 2011 Amendments are still on the table.  Following Does #1-5, the Prosecuting Attorneys Coordinating Council ("PACC") — which is "an autonomous entity in the department of attorney general" established by statute, see Mich. Comp. Laws § 49.103(1), with Attorney General Bill Schuette serving as Vice Chair — advised all prosecutors in Michigan that "[e]nforcement of the SORA amendments retroactively in light of [Does #1-5] should be made

---

[5] Worthy comes closest, having argued that Roe's claims are moot "because the status quo is that Plaintiff cannot be arrested for the 1,000-foot school zone restriction."  See Worthy Reply at 4.  But Worthy's statement does not amount to an assurance of non-prosecution.  It also fails to address the threat of prosecution for other SORA violations, such as the travel restriction, which Worthy's office could prosecute if Roe was arrested in Wayne County.  See Mich. Comp. Laws § 28.729(8)(c).

with care and independent examination of the scope of the Opinion and law." <u>See</u> PACC Memo at 5 (cm/ecf page), Ex. A to Snyder/Etue Resp. to Pl. Mot. (Dkt. 25-1).  The PACC does advise prosecutors that they proceed at their own peril, warning of a potential loss of immunity in any § 1983 claims stemming from prosecutions, <u>see</u> <u>id.</u> at 6 (cm/ecf page); but, at bottom, the memorandum functions as a "yellow light" to prosecuting authorities, when only a "red light" will do.

Cooper's causation argument also fails.  One prerequisite to standing is that the injury must be fairly traceable to the challenged actions of the defendant.  <u>G & V Lounge, Inc.</u>, 23 F.3d at 1074.  Even permitting that Roe suffered an injury-in-fact flowing from a credible threat of prosecution, argues Cooper, Roe cannot show how that threat is connected to the Oakland County Prosecutor.  <u>See</u> Cooper Resp. to Pl. Mot. at 17-18.  Roe responds that Cooper has not disavowed an intent to prosecute, and she asserts that "[m]ost SORA violations are prosecuted in the jurisdiction where the individual currently resides, which for Ms. Roe is Oakland County." Pl. Reply at 12 (citing Mich. Comp. Laws § 28.729(8)).

Cooper's argument is little more than a repackaging of her argument concerning injury-in-fact, as it focuses on the fact that she has not yet taken affirmative action to prosecute Roe. <u>See</u> Cooper Resp. to Pl. Mot. at 17-18 ("<u>[T]he OCPO has not taken any action with respect to Plaintiff.</u>" (emphasis in original)).  But, as seen above, not having taken action with respect to a plaintiff is not a bar to standing when a credible threat of enforcement is shown in other ways. Cooper's cited case law likewise is not relevant to the unique standing doctrines applicable to

pre-enforcement challenges to a statute. See <u>Binno v. Am. Bar Assoc.</u>, 826 F.3d 338, 344-345 (6th Cir. 2016).[6]

The causation element in a pre-enforcement case requires the defendant to have the authority to enforce the statute as against the plaintiff. See <u>Bronson v. Swensen</u>, 500 F.3d 1099, 1110 (10th Cir. 2007) (citing cases from the First, Fifth, and Eleventh Circuits). That much is true here. <u>See</u> Mich. Comp. Laws § 28.729(8)(a)-(b) (establishing venue to prosecute SORA violations in any judicial district in which registrant claims to reside or actually resides).[7] This Court has already concluded that Roe has shown a credible threat of prosecution, and that threat comes, in part, from Cooper's office. Indeed, after <u>Does #1-5</u> was decided — but before rehearing was denied — Roe made her scheduled report to the authorities and received, from the Michigan State Police, a notice listing her obligations under the 2006 and 2011 Amendments. <u>See</u> 8/29/2016 Verification/Update Form, 2d Roe Decl. at 16-18 (cm/ecf pages), Ex. 8 to Pl. Resp. to Mot. to Stay (Dkt. 36-9). That notice provides that violations may result in prosecutions, <u>id.</u>, and Cooper has venue to prosecute any violations that Roe commits so long as Roe remains a resident of Oakland County. And Cooper, armed with authority to enforce SORA

---

[6] In that case, a blind person sued the American Bar Association ("ABA") for "mandating" the LSAT, a standardized test that allegedly discriminated against blind people, as a condition for a law school's accreditation. The ABA, however, merely required a "valid and reliable" admissions test. The Sixth Circuit held that, although the ABA afforded the LSAT "presumptive validity" as a valid and reliable test, the ABA had not caused the plaintiff's injury because (i) law schools were free to use another test; (ii) law schools were free to weight any test at their own discretion; and (iii) the ABA lacked any authority to control the content of the LSAT. <u>Id.</u> While <u>Binno</u> does illustrate the general concept of the "fairly traceable" criterion, it does not address the context of threatened prosecution, where case law has provided specific guideposts for decision.

[7] Because Roe resides within Cooper's jurisdiction, Cooper has the power to prosecute any non-workplace violations of SORA that Roe might commit in the future. Prosecutors in other counties would have the power to prosecute for any future violations by Roe in other counties, as venue lies "where the individual was arrested for the violation." Mich. Comp. Laws § 28.729(8)(c).

and its Amendments, continues to refuse to disavow an intention to enforce SORA.  See Cooper Resp. to Pl. Mot. at 21-22 ("[g]ranting Plaintiff such a pre-enforcement injunction impermissibly divests the OCPO of its prosecutorial discretion and decision-making authority over whether to initiate prosecutions under SORA"); see also 10/3/2016 Email, Ex. 20 to Pl. Mot. at 2-3 (cm/ecf pages) (deeming Roe's proposal to dismiss Cooper, contingent upon Cooper's agreement not to prosecute, "not acceptable, and . . . not close to being acceptable").  Plaintiff, therefore, has sufficiently alleged causation to proceed with her case.

With all standing requirements having been properly supported, this case cannot be dismissed for lack of standing.

### 2. Roe's Case is Ripe

"Three factors guide the ripeness inquiry: (1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings."  Berry v. Schmitt, 688 F.3d 290, 298 (6th Cir. 2012).

In Susan B. Anthony List, 134 S. Ct. at 2346, the Supreme Court concluded that the first factor — the likelihood that the harm alleged will ever come to pass — was satisfied by its determination that the petitioners had "alleged a credible threat of enforcement."  See also id. at 2346-2347 ("[Petitioners] have alleged a credible threat of enforcement. . . .  [T]he Sixth Circuit separately considered two other factors: whether the factual record was sufficiently developed, and whether hardship to the parties would result if judicial relief is denied at this stage in the proceedings." (emphasis added)).  Accordingly, the fact that Roe has established a credible threat of enforcement for standing purposes also satisfies the first prong of the ripeness inquiry.  See

14

also Warshak v. United States, 532 F.3d 521, 525 (6th Cir. 2008) (ripeness and standing doctrines "unquestionably overlap").

Governor Snyder and Colonel Etue's ripeness argument attacks this first prong, solely focusing on the reality that Roe has not yet been prosecuted and might never be prosecuted. See Snyder/Etue Resp. to Pl. Mot. at 4-7. The argument does not fully address whether prosecution is particularly unlikely; it simply notes the obvious fact that prosecution has not occurred at this time. But if this fact truly precluded a pre-enforcement challenge to a statute, then a pre-enforcement challenge to a statute could never proceed. By definition, it is true in every single pre-enforcement case that the plaintiff has not yet been arrested or prosecuted. The likelihood of the harm factor is determined by "how imminent the threat of prosecution is and whether the plaintiff has sufficiently alleged an intention to refuse to comply with the statute." Norton v. Ashcroft, 298 F.3d 547, 554 (6th Cir. 2002) (emphasis added). Snyder's and Etue's response does not address Roe's allegations bearing on these questions.

The remaining two prongs of the ripeness inquiry also are satisfied. First, the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims. Berry, 688 F.3d 298. When, as here, a statute is challenged on legal grounds, no further factual development is necessary. Compare Susan B. Anthony List, 134 S. Ct. at 2347 (challenge to political speech statute "purely legal" and therefore ripe), with Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 736-737 (1998) (challenge to "elaborate, technically based" land management plan was unripe because implementation of the plan was necessary to see whether it was flawed in the manner alleged). Roe's challenge to SORA and/or its 2006 and 2011 Amendments requires no further factual development. In deciding justiciability questions at this stage of litigation, all allegations in the complaint must be taken as true. See Cincinnati

15

Sch. Dist. v. Bd. of Educ. of Ohio, No. 04-4258, 2005 WL 6781829, at *3 (6th Cir. Oct. 17, 2005).  Roe alleges that she is subject to SORA and that she would like to do things that, but for the Amendments, she would be permitted to do freely.  No one disputes that the actions Roe wishes to take, such as traveling for more than seven days without providing in-person notice, violate the Amendments.  Nor does anyone dispute whether Roe's stated desire to violate the Amendments' restrictions is genuine.

To refute ripeness, a defendant must identify a yet-to-occur factual development that, until it occurs, precludes resolution of the case.  Worthy's argument on this point, however, has nothing to do with the nature of Roe's underlying claim; nor does it identify any future factual developments that need to occur before adjudication can proceed.  Instead, Worthy argues that she "has no personal knowledge of any of [Roe]'s allegations or situation, has no control or authority of the City of Royal Oak Police Department, and there has been no arrest and warrant request submitted for the Prosecutor to review for possible recommendation.  In short, the Wayne County Prosecutor cannot be forced to defend some hypothetical action she may or may not take based upon information she does not possess."  Worthy Am. Mot. to Dismiss at 10-11.

 In fact, Worthy has adequate knowledge of Roe's allegations or situation, because those allegations are set forth in Roe's amended complaint; in any case, this element of the ripeness inquiry focuses on future developments.  Further, Worthy fails to explain why her lack of "control or authority" over the Royal Oak Police Department is relevant; certainly, the Royal Oak police are not the only avenue by which Worthy could prosecute Roe.  And, finally, the lack of an arrest or other indicia of actual prosecution obviously are not dispositive.

Finally, regarding "hardship," the Court in Susan B. Anthony List held that "denying prompt judicial review would impose a substantial hardship on petitioners, forcing them to

choose between refraining from core political speech on the one hand, or engaging in that speech and risking costly Commission proceedings and criminal prosecution on the other." Id. The same type of hardship is present here — Roe must either risk prosecution or surrender her right to be free of an unconstitutional restraint on her liberty.

Roe's claims are ripe.

### 3. Roe's Case Is Not Moot

Claims become moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Cnty. of Los Angeles v. Davis, 440 U.S. 625, 631 (1978). A court can neither declare unconstitutional nor enjoin the enforcement of a law that is no longer in effect. Brandywine, Inc. v. City of Richmond, Ky., 359 F.3d 830, 836 (6th Cir. 2004). Similarly, a case is moot if the defendant is a governmental official and his acts of "voluntary cessation" of the offending conduct "appear genuine." Bench Billboard Co. v. City of Cincinnati, 675 F.3d 974, 981-982 (6th Cir. 2012).[8]

Worthy is the only Defendant to raise a mootness challenge to Roe's case. She argues that Roe's claims against Wayne County are moot in light of Royal Oak's stipulation not to prosecute Roe for violations of the Amendments. See Worthy Am. Mot. to Dismiss at 4-8; see also Worthy Resp. to Pl. Mot. at 1 (incorporating arguments made in motion to dismiss). Worthy's argument depends upon the following premise: "There is . . . no dispute that without a City of Royal Oak police department investigation and arrest, no warrant request could ever be reviewed and acted upon by the Wayne County Prosecutor under the theory alleged in the First

---

[8] The stricter standard advanced by Roe (i.e., that a case does not become moot unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur") applies to private parties, not governmental defendants. See Pl. Resp. to Worthy Am. Mot. to Dismiss at 13 (quoting Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 222 (2000)) (emphasis in original).

17

Amended Complaint."  Worthy Am. Mot. to Dismiss at 8.

Roe concedes that the December 12, 2016 stipulated order moots her claim for injunctive relief against the Royal Oak defendants.  See Pl. Mot. at 1 (cm/ecf page) (motion for preliminary injunction is "resolve[d] as to Defendants O'Donohue and Cavanaugh").  The Court believes that this amounts to a concession that, insofar as the Royal Oak defendants are concerned, their voluntary cessation of any offending conduct related to the 2006 and 2011 Amendments "appears genuine."

Worthy, whose jurisdiction covers Wayne County, in which Roe is employed, cannot hide behind the stipulation of the Royal Oak defendants, whose jurisdiction covers a small part of Oakland County, in which Roe lives.  Worthy is alleged to be the most likely defendant to prosecute Roe for a workplace violation.  See Am. Compl. ¶ 36.  Roe alleges that a host of law enforcement agencies "regularly engage in sweeps" designed to ferret out SORA violators, including sweeps of her workplace itself.  See Pl. Resp. to Mot. to Stay at 18.  If Plaintiff violates any provision of SORA, she can be listed as "non-compliant," and such sweeps would result in her arrest.  Worthy provides no support for her conclusory claim that "no warrant request could ever be reviewed and acted upon by the Wayne County Prosecutor" without involvement from the Royal Oak Police Department.  Indeed, under Mich. Comp. Laws § 28.729(8)(c), SORA violations can be prosecuted "[w]here the individual was arrested for the violation." Accordingly, this Court does not agree that the Royal Oak Defendants' December 12, 2016 stipulated order moots the case as to Worthy.

In her reply, Worthy argues that "the status quo is that [Roe] cannot be arrested for the 1,000-foot school zone restriction," and that this has the same effect as a "voluntary cessation" of the offending conduct.  See Worthy Reply at 4-5 (citing Bench Billboard, 675 F.3d at 982).

None of Roe's cited cases, argues Worthy, involves a challenge to a law that had <u>already</u> been repealed or, as in this case, struck down by a court.  <u>See id.</u> at 5-6.

Worthy is correct that the posture of the instant case is unique.  It has been the understanding of all parties and this Court throughout the case, however, that Roe can be prosecuted notwithstanding <u>Does #1-5</u>.  This understanding, combined with Worthy's and others' refusal to disavow prosecution, minimizes the distinguishing fact that Roe's cited cases involved laws whose validity had not been ruled upon by a court.  As noted above, Roe made her scheduled report to the authorities and, after <u>Does #1-5</u> was decided but before rehearing was denied, received a notice listing her obligations under the 2006 and 2011 Amendments.  <u>See</u> 8/29/2016 Verification/Update Form, 2d Roe Decl. at 16-18 (cm/ecf pages).  That notice provides that violations may result in prosecutions.  <u>Id.</u>  It has been hinted that such a prosecution could result in adverse consequences to those Defendants involved, <u>see, e.g.,</u> Worthy Resp. to Pl. Mot. at 1 (prosecution would require Worthy to "disregard the law"); PACC Memo at 6 (cm/ecf page); but this issue has not been briefed.  The Court, therefore, is not convinced that the case is mooted solely by virtue of <u>Does #1-5</u>, which case Defendants repeatedly and explicitly decline to stipulate binds them regarding any prosecution of Roe.

Worthy has not met her heavy burden in demonstrating mootness; a mere disclaimer of an intention to prosecute does not moot a case.  <u>See United States v. W.T. Grant Co.</u>, 345 U.S. 629, 633 (1953) ("[A] profession [of intent to cease illegal conduct] does not suffice to make a case moot . . . .").  For this reason, and because this case is ripe as set forth in Part II.B.1, Worthy's motion to dismiss is denied.

### C.  Roe Is Entitled to a Preliminary Injunction

A district court must consider four factors when determining whether to grant or deny a preliminary injunction: (i) the plaintiff's likelihood of success on the merits; (ii) whether the plaintiff may suffer irreparable harm absent the injunction; (iii) whether granting the injunction will cause substantial harm to others; and (iv) the impact of an injunction upon the public interest. Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 274 F.3d 377, 400 (6th Cir. 2001). The movant seeking a preliminary injunction carries the burden to show that the circumstances clearly demand it. Overstreet v. Lexington-Fayette Urban Cnty. Gov't, 305 F.3d 566, 573 (6th Cir. 2002). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." Leary v. Daeschner, 228 F.3d 729, 739 (6th Cir. 2000).

Roe has shown a likelihood of success on the merits. Although Roe argues that SORA is invalid in its entirety, she argues in the alternative that SORA's 2006 and 2011 Amendments cannot apply retroactively to her. See Am. Compl. ¶ 74. This legal question has been answered in Roe's favor by Does #1-5 v. Snyder, 834 F.3d 696 (6th Cir. 2016), and that decision is binding upon this Court. Roe's injunction only seeks to enjoin the operation of the Amendments. See Pl. Mot. at 1-2 (cm/ecf pages). Accordingly, it is a foregone conclusion that, unless and until Does #1-5 is reversed by the United States Supreme Court, Roe will succeed on the merits of her claim that the 2006 and 2011 Amendments cannot be applied to her.

Roe also has shown that she will suffer irreparable harm absent the issuance of the injunction. Specifically, in addition to the visit from Officer Cavanaugh that spurred the filing of Roe's complaint concerning the potential workplace violation, she alleges ongoing harm by having to comply with all other of the Amendments' strictures, and by being listed as a "tier III offender" on the public registry. See, e.g., Pl. Br. at 9 (Roe seeks to "disregard[ ] post-2006

provisions of SORA"); Am. Compl. ¶¶ 10, 70; Pl. Resp. to Mot. to Stay at 11-13.  "[I]f it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated."  Am. Civil Liberties Union of Ky. v. McCreary Cnty., Ky., 354 F.3d 438, 445 (6th Cir. 2003), aff'd sub nom., McCreary Cnty., Ky. v. Am. Civil Liberties Union of Ky., 545 U.S. 844 (2005).  By proving an ongoing injury, which entails a violation of her constitutional right to be free from Ex Post Facto punishments, Roe has shown that she will suffer irreparable injury if an injunction does not issue.

Finally, granting an injunction will not cause substantial harm to others, and it will serve the public interest.  When the plaintiff establishes a likelihood of success on the merits in her underlying challenge to a law as unconstitutional, it is at best "questionable" whether the defendant can suffer harm by being restricted from enforcing that law; and it is always in the public interest to prevent enforcement of unconstitutional laws.  Planned Parenthood Assoc. of Cincinnati, Inc. v. City of Cincinnati, 822 F.2d 1390, 1400 (6th Cir. 1987); Miller v. City of Cincinnati, 622 F.3d 524, 540 (6th Cir. 2010).

Because Roe has carried her burden to show that an injunction is warranted, her motion is granted.

### III.  CONCLUSION

For the reasons set forth above, Defendants' motion to stay (Dkt. 26) is denied; Worthy's motion to dismiss (Dkt. 33) is denied without prejudice; and Roe's motion for preliminary injunction (Dkt. 34) is granted.

Effective immediately, Defendants, as well as their officers, agents, servants, employees, attorneys, as well as any other persons who are in active concert or participation with them (hereinafter "Defendants"), are enjoined from initiating any prosecution of Roe that conflicts

21

with the holding of <u>Does #1-5 v. Snyder</u>, 834 F.3d 696 (6th Cir. 2016).  Defendants are further

ordered to bring Roe's publicly accessible registry page into compliance with <u>Does #1-5</u>.  If that

case eventually is overturned, Defendants are further enjoined from enforcing any violation of

SORA's 2006 and 2011 Amendments that Roe committed while that case was good law.  It is

further ordered that, in an exercise of the discretion granted by Federal Rule of Civil Procedure

65(c), the Court will not require security because there is no possibility of material damages to

Defendants flowing from the injunction.  <u>See</u> <u>Plane v. United States</u>, 750 F. Supp. 1358, 1374

(W.D. Mich. 1990).

     SO ORDERED.

Dated:  March 3, 2017                 s/Mark A. Goldsmith

     Detroit, Michigan              MARK A. GOLDSMITH
                                 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and
any unrepresented parties via the Court's ECF System to their respective email or First Class
U.S. mail addresses disclosed on the Notice of Electronic Filing on March 3, 2017.

                       s/Karri Sandusky
                       Case Manager